IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| John Portee, Jr., *a/k/a* John H. Portee, Jr., | ) | C/A No. 8:15-cv-00487-PMD-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Robert Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 27.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on January 28, 2015.[1] [Doc. 1.] On June 17, 2015, Respondent filed a motion for summary judgment and a return and memorandum to the Petition. [Docs. 26, 27.] The same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 28.] Petitioner's response in opposition was entered on the docket on September 16, 2015. [Doc. 39.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, construing the filing date in the light most favorable to Petitioner, this action was filed on January 28, 2015. [Doc. 1 at 25 (declaration in Petition, stating it was placed in the prison mailing system on January 28, 2015).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## **BACKGROUND**

Petitioner is presently confined in the South Carolina Department of Corrections at Broad River Correctional Institution pursuant to orders of commitment of the Richland County Clerk of Court. [Doc. 1 at 1.] In October 2006, Petitioner was indicted for two counts of murder and one count of armed robbery. [Doc. 26-4.] On January 12, 2009, represented by Douglas S. Strickler ("Strickler") and Ashley Thomas ("Thomas"), Petitioner proceeded to trial. [App. 1–650.[2]] The jury returned a verdict of guilty on all charges [App. 629–33], and Petitioner was sentenced to life imprisonment on the murder charges and thirty years imprisonment on the armed robbery charge, all sentences to run concurrent [App. 648–49].

**Direct Appeal**

Petitioner appealed his conviction. [Doc. 26-5.] Wanda H. Carter ("Carter") of the South Carolina Commission on Indigent Defense filed an *Anders*[3] brief on Petitioner's behalf in the South Carolina Court of Appeals, dated November 3, 2009, raising the following issue:

> The lower court erred in issuing a confusing and misleading alibi charge in the case.

---

[2]The Appendix can be found at Docket Entry Numbers 26-1 through 26-3.

[3]A brief filed pursuant to *Anders v. Cal.*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

2

[Doc. 26-6 at 4.]  At the same time she filed the *Anders* brief, Carter submitted a petition to be relieved as counsel.  [*Id.* at 10.]  Petitioner then filed a pro se brief raising the following issues, quoted substantially verbatim:

1)     The State of South Carolina lack the jurisdiction to indict before Grand Jury for failure to establish probable cause first not last upon evidence being missing to obtain subject, 4th amend.

2)     The Trial Attorney failed to establish a actual innocence defense.  Williams v. State, 571 S.E.2d 572, earliest.

3)     The Rule 3(c) of Rules of Court was violated when no preliminary functions exist to bound over case to General Sessions nor evidence.

4)     The alleged Wendy's restaurant wasn't examine upon the qualified investigator's of the Public Defenders office, lacking crime scene reports.

5)     The DNA was negative to place subject at the allege crime and forensic results.  1 in quintillion is a opinion and not fact - the jury only base their decisions on law and fact.

6)     The jurors petit was inattentive during trial and the verdict didn't match the allege proof.

7)     The dog trail wasn't established at trial nor was a helicopter assign to the area.

8)     The State is withholding "Brady" material that's relevant to Appellant innocence.

9)     The state has no pre-interrogation waive forms in Rule 5-b discovery.

10)    While handling subject and subject allege witnesses and or State witnesses the State of S.C. should've had an audio or video camera present.

11)     The solicitor never placed the place of the allege murder weapon in the appellant's hand at trial nor the evidence the State allegely present.

12)     The proximate case of the alleged murders wasn't brought out at trial.

13)     The attorney should've brought out at trial that even if words were pass this wouldn't elevate to a murder, people working at a restaurant always conspire back and forth, words don't constitute murder.

14)     The malice express or implied wasn't established nor within indictments § 31-4- murder allegely defined.

15)     The elements of murder wasn't at trial nor was the witnesses able to place appellant at the allege crime scene.

16)     Rule 404 – 403(A)(B) the allege evidence should of been excluded as inadmissible-all irrelevancy to the case-when no support of physical evidence-footprints, blood work, DNA, stride, etc.;

17)     The attorney ignored the competent handling of the particular matters at trial to include objections for the judge to analyze the factual legal elements of the problems alleged. Strickland test violated.

18)     The Appellant wasn't advised of a 24 hour notice before sentencing phase of trial.

19)     The Appellant wasn't served with a proper timely certified true copy of a notice of intent to seek two life sentences-plus nature of what facing.

20)     The attorney didn't object before trial to the time not being present in Indictment-State v. Bullard 560 S.E.2d 436 (C.T. App 200

21)     The attorney failed to establish a trial strategy.

22)     The attorney failed to establish involvement of the allege accusations nor was the accusations confirm by the petit jurors of twelve.

4

23) The Sled results appear to be authentic, investigate and under Bousely and Schlup, you have the right to have issues decided on merits of case because you're claiming actual innocence regardless of procedural default.

24) A Anders Brief is illegal; once a attorney examines the case and find no merit, then case is to be pass to another attorney for examination the attorney must believe the client and that merits/truth of the case is true in fact on each-n-every issue. (The Direct Appeal wasn't perfected)

25) The appellant entitled to a Directed Verdict- Munn, Moohoney, Shrock- no fingerprints, gestures, physical evidence–etc.; U.S. v Velarde-Gomez; 269 f 3d 1-23. No evidence in records)

26) The allege testimony is obviously contradicted and inconsistant untruthfulness.

27) The judge erred to not rule in favor that the subject wasn't in handcuffs, to analyze in custody rules and laws-during Ruling see Transcript. pg. 85-87.

28) The appellant at job was assigned to several jobs acquiring honesty and publication reputation.

29) The Appellant's attorney didn't argue the facts, or the law, nor statue's at trial to demonstrate my innocence.

30) An arrest must stand on firmer ground than mere suspicion/presence. Transcript pg. 536-23-25 pg. 537 1-2. Beck v Ohio, 379 U.S. 89, 91 (1964) and also the face of arrest warrant didn't have the inventory of items correctly to establish the warrant chain of custody nor investigation of facts to support narrative/affidavit.

31) The chain of custody was broken, not all officers loged in at allege crime scene nor present at trial, due process violation (14th amend)-probable cause.

32) The appellant/subject request a copy of crime scene reports, laboratory notes, methods, randomness of test accuracy complete protocol associated with this case

5

alleged and all copies to be before courts-of DNA testing failures and memos problems.

33) The allege shots fired, allege they were shot through the bodies, whether or not bullet passed through certain body parts weren't in reports.

34) The weight of bullets wasn't established nor whether they were losing weight when striking something. 1.4 2.4 etc.

35) The attorney didn't object to the Indictment speaking conjunctively language in a whole not 112-the indictments allege the appellant <u>did</u> in _____ on; not the appellant was accused on or between-the word <u>did</u> in indictment prejudice appellant.

36) The attorney should've requested for a change of venue at trial.

37) The § 16-3-10 wasn't defined within judge instructions "Murder is the killing of any person with malice aforethought, either express or implied."

38) The law wasn't established that just because this is allegely a violent crime I'm on trial for that doesn't make me violent-"the jurors were mislead."

39) The <u>Miranda</u> remain silent rule wasn't established nor was a attorney appointed after obvious view of Appellant wanted to exercise 5th amend rights-<u>Edwards v Arizona</u>, 451 U.S. 477, 101 S.C. 1880, 68 L. Ed. 2d 378 (1981); coercise police activity-incintive, physicaly or obviously.

40) The ambulance reports, Dr. reports (time of death), attorney files; Hospital records, lead surgeon; evidence wasnt at trial.  <u>Strickland</u> malicious prosecution, judge misconduct.

41) The attorney fail to arise a Deno/Jackson hearing on the evidence and whether or not the police stop questing Appellant according to laws or question Appellant before a attorney was appointed. 14th amend etc;

42) The Appellant is claiming appeal attorney didn't establish the exhaustion requirements. Rose v Lundy 5 US 509 (1982).

43) The counsel performance fell below <u>Strickland</u> test at trial and Counsel should've had a polygraph test conducted on Appellant witnesses and a few examiners, officers.  See transcript.

44) The Appellant had a warrantless arrest and was taken in custody-Tr. p. 83.

45) The Appellant questioned officer Roberts for why he was being obtained-no clue, evidence, affidavits, illegal search and seizure without proper document(s). 4th amend. Tr. p. 84

46) On Tr. p. 47-The Appellants attorney should've pursued the suppression of form of questions and a double murder accusations-anything Appellant says can and will be held against me.–<u>Incriminating</u>.

47) On Tr. p. 92-the judge over object and let the camera crew in the courtroom extra flamatory insight for jurors petit.

48) Attorney should've objected to the Appellant being charged with Double murder.  Tr. p. 96.  Also the charge in the indictment(s) without proof.

49) All twelve jurors wasn't convinced unanimously of the law fails-Tr. p. 96; Tr. p. 630.  The alternative also had question in fact/law(s).

50) The indictment didn't allege <u>with the permanently intent to deprive the property</u>-§ 16-11-330(A) violated; Also the State has been constructively amended to contrue the taking element(s) of armed robbery statue, supra.

51) A jury nor state cannot have the conclusion(s) of the circumstances a Appellant was armed with a deadly weapon.

52) Robbery is a lesser included offense of arm robbery-see § 16-11-330 and the charge was sent to jury petit in

7

question of the jury Instructions on the arm robbery and the amount of money/property alleged to be taken were at question(s).

53) The Appellant ask the Court to define Possession of a weapon detail rulings.

54) The jury was inattentive at trial.

55) The solicitor and doctor made prejudicial comments throughout the whole trial as well as attorney.

56) Analyst Gray Amick testimony wasn't to proofer the evidence; only boltered the Solicitors version of the events, and the testing(s) analyst shoud've been thrown out and challenged pursuant to rule 613(B). S.C. RCRIM. P opinion.

57) There was no evidence to develop a DNA profile on the bullets nor dates/times see Tr. p. 455 allegely.

58) The analyst used the slang term auto for automatic that prejudice my case.

59) Tr. p. 468. This form of questioning should've been objected to, no evidence states Appellant fired the gun being charged allegely.

60) The key question(s) Is did my client "Mr. Portee" fire this weapon from your Expert Field?) wasn't asked by trial attorney.

61) Tr. p. 416 If a person is [illegible] Wendy's restaurant, a 45 automatic weapon, should've been heard by passengers or allege persons that the State questioned. The examiners states, the noise is loud.

62) The attorney should've object to Ms. Trapp testimony that two or three people supposed to open up that morning at Wendy's and Mr. Portee wasn't present and a argument expired at a later date between the two co-workers-no significance to case confusing Jurors petit.

63) Tr. p. 506. The Detective isn't qualified to testify to the people being dead, only can infer from autopsy/Dr. Reports/coroners report-this was factual testimony not from Dr. Notes allegely.

64) Tr. p. 371, the detective wasn't wearing any gloves when, "Det. William Gonzales" opened the bag allegely.

65) Erroneous instruction-arm robbery define as the permantly intent to take property/ chattels allegely Tr. p. 106

66) Tr. p 106, the jury must meet a degree of certainty the equals to absolute certainty.

67) No gun residue kit conducted to try and conclusively link appellant to allege gun-prejudicial.

68) No fingerprints, incriminatingly recovered from crime scene or anywhere that's crucial on appellants behalf.

69) The investigation by Richland County Authorities was slack and unprofessional, steming from a dog trial, to the questioning of state's witnesses; the arrest/Miranda warnings/and the handling of allege evidence–etc.;

70) The Appellant's physical appearance is spotless to the Court. No victims blood on Appellant, no video at the restaurant allegely.

71) The DHEC laws and State-n-Federal Rules mandates a camera to be installed into a place of business

72) The Jurors should've been rescheduled, mostly had prior histories or some sort of complaints.

73) The attorney should've introduce evidence in rebuttal of the weapons charge, and good, peaceable character, quiet.

74) The allege earlier comment or threat allege should've been suppress by allege co-workers at Wendy's-the jurors petit could've infer premeditated murder allegely.

75) What constitute murder?  54 ALR 3d 612

9

76)    Review-<u>State v Levelle</u> (1891) 34 SC 120, 13 SE 319.

77)    The solicitor shifted the burden of proof when in fact he stated "I killed the two women" allegedly without alleging a chain of events that lead to the allege event acussed of.

78)    Counsel failed to make premptory motions at sentencing because all sentencing factors and sentencing laws wasn't present.  A attorney is bound to have case law at trial.

79)    The attorney failed to have the Insurance Company of Wendy's records present at trial and investigation(s) reports.

80)    The attorney at trial failed to establish that I was unarmed at the arrest site.

81)    The trial judge didn't state life until death and from a silent record, that's prejudicial.

82)    The attorney failed to subpoena my potential witnesses to support my claims and defenses.

83)    The speed of the bullets allegely was never established.

84)    By not having the principle Dr.'s to the trial releived to State of S.C. of it's burden of proof unconstitutionally to prove beyond a reasonable doubt the elements of murder.

85)    The jurors petit-fact finders wasn't aware of the time of the allege crimes by suspect nor could the State place at scene doing the allege crime in jurors eyesight.

86)    The mere fact wasn't establish of other fingerprints found on weapon(s) allegely.  Tr. pgs. 438-439.

87)    All the States witnesses testimony was un-necessary not linking Appellant to no actions of crime nor allegations in indictment(s).

88) The description of the property allegely taken not allegely recovered and no serial numbers of money was investigated.

89) Post arrest silence commented on-see transcript. <u>Doyle</u>, <u>Payne v State</u>, 355 S.C. 642, 645, 586 S.E. 2d 857, 859 (2003).

90) The State may not directly nor indirectly presume to stop questioning a defendant and the questioning doesn't cease-<u>Miranda</u>.

91) The law <u>Gentry</u> doesn't need objection before Jurisdiction is establish. If the vehicle is posion then the objection to the notice of charge is irrelevant. Tried by way of valid indictment.

92) The elements of murder wasn't within the lanuage of indictment, the statutory wording not satisfied nor caliber of weapon alleged nor the time <u>Bullard</u>, supra.

93) The subject motions for a affidavit from, John Meadors and Joanna McDuffie, Solicitors at my trial of their findings of probable cause and the leads that it took to arrest appellant.

94) The appellant contest the True Bill stamp by the foreman of Grand Jury; no presentment. <u>Anderson</u>.

95) The appellant ask for experts and other attornies to be appointed in the field of criminal law.

96) The fact wasn't present who filed the charges; the state, sheriff department, solicitors, etc.;

97) Attorney ineffective for failing to find law case to support that Wendy's restaraunt is to be govern by video cameras.

98) The transcript that appellant received isn't a trial transcript, only a transcript of record; forward a trial transcript.

99)  The judge opened the door for the custody/Miranda claim to be suppress and closed it-see Tr. pg. 85 13-25 & 86-87.

100)  The claims of miscarriage of Justice is within the judge face at trial and no ruling by evidence allege at trial–see brief-

101)  The law states you must be armed to committ a arm robbery allege crime.

102)  The attorney failed to cross examine the allege witness "Heather Hunter" as to inconsistent statement(s) and intimidation by law § 16-9-340 (Law of South Carolina 1976 Title 16-7-A)

103)  The solicitor manufactured evidence by using circumstances that didn't exist to get the point of connecting the chain of circumstances allegely.

104)  Tr. pg. 225 will support that Deputy Blackmore didn't log in all investigators at allege crime scene and in case in general <u>Crime Scene Securance</u>.

105)  The allege crime scene is contaminated and evidence without proper documentation of officers; leaving the case at a holt/naughty-rotten fruits.

106)  Counsel failed to move for mistrial on Tr. p. 313-327, the allege witness states she was scared and intimidated-coerced testimony-only free will testimony is admissible at Court, <u>For foregoing, new trial appeal bond; etc.; release</u>.

107)  Rule 803-804-Hearsay is inadmissible-see Transcript, Gun Testimony, Heather Hunters testimony, Miranda advisement, without audio, video or legal documents, solicitors etc.

108)  The 8th amend, governs cruel-n-unusual punishment, even the trial Judge knew the elements didn't equal to two life's plus thirty-secondary sort out sentencing Tr. pages and the sentencing factors-even though the jury allegely convicted that's only a opinion.

> 109) Review the Indictment(s)-06-GS-40-7437-7439. Two counts murder; 1 count arm robbery overrule <u>Gentry</u>; Gilstrap v State, 252 S.C. 625 (1969).
>
> 110) The judge abused His discretion by saying "There's ample evidence that a jury could find appellant guilty." Tr. p. 539 14-16.

[Doc. 26-7.] The South Carolina Court of Appeals dismissed the appeal and granted counsel's motion to be relieved in an opinion that was submitted on January 1, 2011 and filed on February 1, 2011. [Doc. 26-8.] Remittitur was issued on February 22, 2011. [Doc. 26-9.]

## PCR Proceedings

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on August 9, 2011. [App. 651–62.] Petitioner alleged he was being held in custody unlawfully based on the following ground, quoted substantially verbatim:

> (a) A violation of Applicants right to due process of law as guaranteed by the U.S.C.A. 14th Amendment, and Article 1, § 3 of the South Carolina Constitution.

[App. 653.] In support of his ground, Petitioner alleged the following facts, quoted substantially verbatim:

> (a) Applicant presented alibi as his defense at trial, and the trial judge committed reversible error by issuing an instruction to the jury on the alibi charge that was both confusing and misleading; <u>see Trial Transcript</u>, p. 620, l.11-19. Applicant states that this erroneous, violative instruction attached to the alibi charge went far beyond the definition of Applicants alibi defense, and as a result established a violation of Applicants rights and entitlements to a fair and impartial trial under the guarantees of due process, as provided by the U.S.C.A. Fourteenth Amendment to the United States Constitution, and also under Article 1, §3 of the Constitution of South Carolina. Applicant states that

13

prejudice can be presumed from the confusing and misleading instruction given to the jury, and has been settled by precedent law in the State of South Carolina in the cases of State v. Robbins, 275 S.C. 373, 271 S.E.2d 319 (1980), Riddle v. State, 308 S.C. 361, 418 S.E.2d 308 (1988), and State v. Elmore, 279 S.C. 417, 308 S.E.2d 781 (1983). As the fatally defective jury instruction violated Applicants right to the due process of law by unfairly prejudicing the results of Applicants trial, it is incumbent upon this Court to reverse the convictions and sentences obtained from the biased, unconstitutional jury instruction and remand for a fair, constitutionally sound trial that comports fully with the mandates of due process of law, made compulsory upon South Carolina by the Fourteenth Amendment to the United States Constitution and Article 1, §3 of the South Carolina Constitution.

(b)     Applicant brings the additional due process claim of duress and coercion by States Attorney against subpoenaed Witness Heather Hunter at Applicants trial. In Applicants Trial Transcript, p.314, l.7 thru p. 317/ l.8, Witness Hunter admitted that she gave three (3) successive statements before testifying at Applicants trial, and that from the first statement she felt intimidated and scared; Tr. Tran., p. 314, l.11. Witness Hunter also testified that the States Attorney directing the questioning for the prosecution was the same Court Officer who had levied a charge of MISPRISONMENT FELONY against her, which conviction is punishable by a ten (10) year prison sentence, and which States Attorney " . . . has control over what happens to you in the future?"; see Tr. Tran., p. 316, l.9 thru p. 317, l.4. Witness Hunter testified further that she wrote Applicant a letter in October, 2008, 2 years after the murders were committed, saying, in effect, that what she had given in her second and third statements was untruthful, the subject matter of the statements being the incriminating testimony that Witness Hunter gave in the successive statements that she had heard two loud noises while Applicant was away from the car; Tr. Tran., p. 325, l.13-24. Witness Hunter went on to testify that she had given four (4) formal statements, each statement being different and inconsistent with the previous statements. Witness Hunter continued giving these statements at

14

the "request" of the States Attorney who conveniently held the authority to legally take away Witness Hunters constitutional right to liberty for ten (10) years if she refused to cooperate with the prosecution, and was subsequently convicted of the MISPRISONMENT FELONY charge; Tr. Tran., p. 325, l.25 thru p. 326, l.14. The record of the proceeding exposes the States Attorney, the Deputy Solicitor referenced above, attempting to coerce and lead Witness Hunter at Applicants trial, to which Witness Hunter balked and denied being threatened in any manner by Applicant; Tr. Tran., p. 330, l.25 thru p. 331,

(c)    Applicant states that the credibility of the testimony of Witness Heather Hunter is susceptible to scrutiny by reason of conflicting and contradictory statements, as well as inconsistent testimony under oath. Applicant states the claim that his convictions and sentences are subject to reversal based on the bias and partiality influence unfairly permitted in Applicants trial. The prejudice resulting from the inconsistent and contradicting testimony of Witness Heather Hunter is evident from a reading of Applicants transcript. The States Attorney/Deputy Solicitor overtly exhibited coercion and duress upon Witness Heather Hunter for the sole purpose of improperly eliciting damaging testimony against Applicant. The instance documented in Tr. Tran., p. 330, l.330 thru p. 331, l.3 stands to establish a further violation of Applicants due process of law guarantee, where the improper conduct of the prosecuting attorney deprived Applicant of a fair and impartial hearing. For this reason Applicants convictions and sentences should be reversed and remanded for a new trial.

[*Id.*] The State filed a return dated December 6, 2011. [App. 663–69.] Petitioner amended

his pro se PCR application to add the following allegations, quoted substantially verbatim:

Appellate Counsel failed to appeal trial counsel's objections as they are preserved for appeal/appellate review is effective assistance of counsel, as to retrospect to trial counsel's objections on record, the appellate counsel caused Applicant to suffer a deprivations of lost to have the Appellate Court to give a entitled review to all reserved issues by the court's rules.

15

Here in Applicant's case matter, his 6th Amend. of U.S. Const. Was violated because he have a right to effective assistance of counsel as guaranteed by U.S. Const. 6th Amen., and S.C. Laws, Applicant take positions by the following laws authorities as cited.  See Gilchrist v. State, 364 S.C. 173, 612 S.E.2d 705 (2005);  Anderson v. State, 354 S.C. 431, 581 S.E.2d 834 (2003);  Southland v. State, 337 S.C. 610, 524 S.E.2d 833 (1999).

Applicant present issues with merits by the submittals of the records, TT. pages 14-21, lls. [illegible] of Hearing held on Oct. 20, 2008.  Regarding Brady violations, see also T.T. pages 231, lls. 9-25; TT. pg. 232, lls. 1-16; counsel raised issues about shackles on client; TT. pg. 91-93, lls. Cameras in courtroom to the detriment of Mr. Portee: TT pg. 77-86, whereas Jack. Deno Hear. See adverse ruling on statements. All issues are preserved pursuant to the Trial Court rules of Evidence.

Trial counsel failed to object to faulty instructions given to the jury.

Trial counsel failures to object to trial court's presumption of innocense instructions to the jury violated Applicant's Const. Rights to a presumption of innocense as is guaranteed by the Federal/State Laws.  Counsel is ineffective because he did not compel the State to prove guilt beyond a reasonable doubt, by not having the trial court to convey to the jury that the Defendant/Applicant's innocense always persists unless the State proves by providing competent evidence of Defendant's guilt beyond a reasonable doubt.  The language of competent evidence is one that the trial court and trial counsels know that can not be altered in no ways, here in Applicant's issues. See in Vol. #1 TT. pg. 95-104, the court used altered language about guilt and innocense, guilty beyond reasonable doubt, and see trial counsel did not object to the erroneous instructions/presentation of trial duties, also see Applicant's jury may have misunderstood the complet language used by the trial court's given instructions, this did prejudiced the Applicant, not receiving a fair trial guaranteed to him, but see at the Vol. #2 TT. pgs. 603-622.  Erroneous trial court's jury instructions as same erroneous given by trial court and trial counsel did not object to it; counsel ineffective as same because it solely violates the mandates of the S.C. Supreme Court it settled in.  See: State v. Bayan Aleskey, Op. No.

16

25212, Heard. 9/19/2000-Filed. 11/12/2000. Aff'd: as Cited. Cage-Victor, Supra. [illegible] Estelle v. McGuire 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); the Applicant stands in the initial authorities as State v. Pedan, 153 S.C. 459, 154 S.E.2d 658 (1930); State v. Danelly, 116 S.C. 113, 107 SE 149 (1921): While Applicant first shows trial counsel is ineffective and Applicant was prejudiced by his failures not to object to the erroneous trial court instruct., as so adhered, Applicant proves accordingly to Adams v. Aiken, 41 F.3d 175, 178-79 (4th Cir. 1994) that is said: an unconstitutional reasonable doubt instruction is a "breach of right to a jury trial "by a jury", resulting in a lack of accuracy and the denial of a bedrock procedural element essential to fairness, and as such is in Applicant's case, the structural error he points out did deprived him of a fundamentatl fair trial.  Applicant also submit that the "harmless error" analyst is not applicable in this issue because of it is a three prong give = "3 issues in 1," see mandates State v. Raffaldt, 318 S.C. 110, 456 SE.2d 390 (1995).

Trial counsel ineffective assistance for not objecting to improper remarks during closing by solicitor.

Trial counsel failures to object to solicitor's improper remarks to jury in closing was an ineffective assistance charge: see T.T. pg. 580LL. 5-25, Solicitor's improper remarks: Take it from me (ll 16)

"The Solicitor's remarks as "Go back there and feel this.  It's them.  It's the victims.  Go back there and get that gun and feel malice.  You want to feel malice?  Feel it pass it around." (omission).

Trial counsel failures to object to the improper remarks made by the Solicitor in closing arguments was impermissable and extremely prejudice against Applicant.  These remarks made by the Solcitor were only for purposes to provoke passion and to induce a point of anger towards the Defendant by the jury/jurors.  Applicant take positions by authority of Payne v. Tennessee, at 501 U.S. 808 (1991) (holding that for Solicitors to invite the jurors to put themselves in the victim's shoes is improper under State Law and is impermissable to be done and go unchallenged by Defendant's Counsel.)

Applicant submit that when Solicitor remarks added the language "as you feel it"; it's the victims: pass it around" and

17

> feel malice, it amounted to inviting the jurors to put themselves in the shoes of the victims as it violated Applicant's rights to a fair trial by a jury, and trial counsel was ineffective when he failed to object to improper remarks made to the jury by the Solicitor.

[App. 671–75.]

A hearing was held on January 16, 2013, and Petitioner was represented at the hearing by Tristan M. Shaffer. [App. 678–770.] On March 8, 2013, the PCR court filed an order denying and dismissing the PCR application with prejudice.[4] [App. 771–86.] A notice of appeal was timely filed and served. [Doc. 26-11.]

David Alexander ("Alexander") of the South Carolina Commission on Indigent Defense filed a *Johnson*[5] petition for writ of certiorari on Petitioner's behalf in the Supreme Court of South Carolina, dated January 8, 2014. [Doc. 26-12.] The petition asserted the following as the sole issue presented:

---

[4]In the order, the PCR court addressed the following issues:

- Ineffective assistance of counsel for failure to present argument on alibi;
- Ineffective assistance of counsel for erroneous advice not to testify;
- Ineffective assistance of counsel for failure to object to improper burden shifting in closing argument;
- Ineffective assistance of counsel for failure to object to jury charge on permissible inference of malice; and
- Ineffective assistance of counsel for failure to investigate potential witness.

[App. 771–86.] Further, on March 27, 2013, Petitioner filed a pro se Rule 59(e) motion. [App. 787–93.] There is no indication in the record that the PCR court addressed this motion. Respondent represents that the PCR court would not have addressed the motion because Petitioner was represented by counsel. [Doc. 26 at 17.]

[5]A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief and effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

18

> Whether trial counsel provided ineffective assistance in derogation of petitioner's Sixth Amendment rights by failing to secure an alibi charge when there was evidence that the crime could have been committed when petitioner was in Georgia?

[*Id.* at 3.]  At the same time he filed the *Johnson* petition, Alexander submitted a petition to be relieved as counsel.  [*Id.* at 11.]  Petitioner then filed a pro se petition, dated January 20, 2014, alleging the following issues, quoted substantially verbatim:

> 1)    Whether trial counsel provided ineffective assistance in derogation of petitioner's fourteenth amendment rights by failing to object to a jury charge which shifted the burden of proof to the defendant?
>
> 2)    Whether P.C.R. court failed to make a ruling on petitioner issues as they are preserved for appellate review?

[Doc. 26-13 at 5.]  The court denied the petition and granted counsel's request to withdraw on September 24, 2014 [Doc. 26-14] and remitted the matter to the lower court on October 10, 2014 [Doc. 26-15].

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on January 28, 2015.  [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim, in his Petition pursuant to 28 U.S.C. § 2254:

> **GROUND ONE:**    Whether the Judge violated petitioner's 5th amendment right for the Miranda claim to be suppress and close it
>
> *Supporting facts*:    Pre-trial hearing held on petitioner's Miranda Rights. App. 77–86.  Counsel cross-examined investigator as to petitioner being handcuffed and question without any warning of Miranda. App 82–84.  It was establish by the Court that petitioner was "clearly in custody."  App 85. The Court would later close the claim without suppression and would allow the statement in trial. App. 86–87.  Statement was inadmissible.

19

**GROUND TWO:**    State's Intimidation of Witness; "Prosecutor Misconduct" 14th amend violation

*Supporting facts*:    Hunter (witness) testified that in her first two statements to the police, she never mentioned anything about hearing "noises."    App. 301.    Hunter also wrote petitioner a letter stating she "never heard any noise." App. 325.  The State charged Hunter with misprision of a felony.  App. 302.  Hunter testified that she was "intimidated" and "scared" throughout "the whole thing," meaning when she gave her statements, up to her testimony at trial.  App 314.

**GROUND THREE:**    Trial counsel was ineffective for failing to investigate and re-examine the ballistics and DNA analysis.  5th amend. violation

*Supporting facts*:    Petitioner testified at P.C.R. hearing he told his cou[n]sel that the "gun wasn't his" and wanted them (counsel) to investigate. App. 699. Trial counsel admits never considering a second opinion as to ballistics or DNA results.  Counsel relied solely on the expert from the State.  App 746–747..  Thus violating petitioner's 14th amendment right and a fair trial.   There was testimony from several state forensic experts in different fields.   An expert in the field of crime scene and fingerprint collection testified that she tried to develop any prints on the weapon and did not develop any identifiable prints.   Then I swabbed the weapon for "DNA."  App. 392–393.  An expert in the field of DNA analysis testified it was DNA on this weapon not associated with blood.  App. 440.  The expert testified, "I saw the presence of DNA and did a quantitation called short tandem repeat DNA analysis."  With the results being "no DNA profile developed."   App. 440–442...ultimately, the firearm identification expert testified, "he received one intact bullet; but during the course of my examination it also separated into two items.  App. 469..  The additional item, the bullet core that had also been removed from the victim, Bolton, did not bear any markings that I could use for identification purposes.  There were no markings that I could use to identify whether it came from that gun or not.  App. 472..  Counsel for petitioner asked the firearm identification expert did he take photographs of the comparisons?

The expert affirmed..  App. 475..  During closing, counsel argued to the jury; Did someone come in and show you what the pictures looked, like, show them to you side-by-side and demonstrate how they are the same?  No..  App. 600..

Trial Counsel's failure to investigate and consult an appropriate, independent expert rendered deficient performance. This critical testimony from states witness was crucial.  Available forensic testimony would have contradicted the prosecution's explanation of the events that transpired.  The duty of the lawyer is to conduct a prompt investigation.  This prejudice petitioner.....

**GROUND FOUR:**    Trial counsel ineffective for failing to raise issue of crime scene contamination and poisonous-fruit-doctrine

*Supporting facts*:    Investigator Gonzales did not log-in at the crime scene. App 724–725.  Counsel for petitioner testified that she didn't believe it was ever brought up that Inv. Gonzales was at Wendy's earlier that day. There was an issue of why he was not mentioning he was at Wendy's.  App 757.  Petitioner testified that counsel did not argue that Inv. Gonzales was the same individual who found this gun. App 724–725..  4th amendment violation.  See also App. 221–223.

**GROUND FIVE:**    Trial Counsel provided ineffective assistance in derogation of petitioner's 14th amendment rights by failing to object to jury instruction on grounds they unconstitutionally shifted the burden of proof to the defendant.

*Supporting facts*:    The trial judge instructed the jury; where a deadly weapon is used, it's permissible for a jury to infer malice.  If it's proved beyond a reasonable doubt that person was killed with a deadly weapon or a dangerous instrumentality the implications of malice does rise and it would permit you to infer malice but it would not require you to infer malice.  That would be entirely up to you jurors.  In other words you jurors are free to accept or reject any inferences raised from the commission of a felony or the use of a deadly weapon or whether malice was proved.  App 621...

Giving of a "use of deadly weapon" charge is error, whether or not it is accompanied by an instruction that the jury has discretion to make the inference. The jury must find malice, if at all, from the evidence, without any aid from the Court as to what weight should be attached to killing with a deadly weapon or what inference they draw from such..

**GROUND SIX:**    Trial counsel provided ineffective assistance of petitioner's 4th, 6th, and 14th amendment right for failing to object to inadmissible evidence.

*Supporting facts*:    During trial, petitioner's counsel, as well as, a crime scene expert established that all the money in the interior of the safe had small particles of high velocity blood spatter on them. App 267–268. Also the money for the till, which is normally there, had blood spatter on it. That's why the till was collected because it was empty. Meaning, whoever did this crime had blood spatter on the money that was taken. App. 270.. Petitioner testified at P.C.R. hearing, that his mother paid him back the money that Friday (2 days before) for paying her light bill, which he still had in his pocket. An investigator took his money out of his pocket. App 722. Petitioner money was taken unlawfully because the investigator never "Mirandize" him. App. 82–85. This money would later be used at trial against petitioner as the money that was taken from Wendy's. The solicitor would argue during closing that,"here is the rest of the money".. App. 577. The money that was taken "unlawfully" from petitioner, and later presented by the state, to the jury, was never established by any crime scene or DNA expert of having small particles of high velocity blood spatter on them. Furthermore, nobody testified at petitioner's trial having analyzed any money. Trial counsel never objected or challenge the evidence.. The jury was free to believe that the money taken from petitioner pocket, was the same money that was taken in a murder, armed robbery. App. 577.. The State asserts $1600 was stolen; petitioner only had a little over $200 on his person. App. 577.

When such money was part of the sentence, was not ill gotten gain, and was not usable or relevant as evidence at trial, is inadmissible evidence. No person shall be

22

deprived of life, liberty, or property, without due process of law, and the judgement of his peers.

The defense counsel at the time of trial, failure to object and make any inquiry to the money and blood spatter, is unreasonable and not have been based on sound trial strategy. This prejudiced petitioner; the right to the effective assistance of counsel at trial is a "bedrock" principle in the justice system.

**GROUND SEVEN:** Trial Counsel ineffective assistance in derogation of petitioner's 6th amendment right by failing to secure an alibi charge when there was evidence that the crime could have been committed when petitioner was in Georgia.

*Supporting facts*: Petitioner worked at the Wendy's restaurant. He was scheduled to work the morning of the murders. App. 683–684. Petitioner's girlfriend (Hunter) rode with him to work and arrived at approximately 8:30 am. App. 682–683. He knocked on the door and no one answered. Petitioner was not able to get inside the store; he left with Hunter. App 683–684.. Petitioner and Hunter decided to go to Georgia to get Hunter's daughter and visit a sick relative.. They left for Georgia between 9:00 and 9:30 a.m. and stopped at a McDonald's on the way. App. 685. They drove to Augusta and stayed until approximately 2:00 pm. Petitioner cell phone records produced at P.C.R. hearing (but not at trial) showed calls originating in Georgia beginning at 11:15 am that morning. App 770. Hunter corroborated petitioner's testimony that they went to Georgia. App 293.

The bodies in this murder case were discovered sometime after 1:30 p.m. App. 133. Dr. Stanson C. Kessler, a forensic pathologist, autopsied the bodies the next day. App 522. Dr. Kessler never rendered a time of death; he was never asked by the State to give any opinion as to the victims' "<u>time of death</u>." Defense Counsel failed to ask the pathologist any questions. App. 518–535.

The State in all cases where petitioner's presence at "the time and place of the crime is necessary to render

23

him responsible." A lawyer who fails to adequately investigate and introduce into evidence information that demonstrates his client's factual innocence or that raises sufficient doubt as to that question to undermine confidence to verdict, renders deficient performance. There was no fact or strategic reason for counsel's failure to present petitioner's cell phone records or ask the pathologist to give an expert opinion to the victims," <u>time of death</u>." These repeated failures prejudiced petitioner.

During the trial, defense counsel admitted never sending a, "notice of alibi" to the state. App. 546..

Notice of alibi rules are constitutional in themselves and preclusion sanction may be constitutionally applied when notice rules are willfully violated with desire to gain tactical advantage.

Despite his failure to provide the State with an alibi notice, trial counsel requested an alibi charge and this request was denied by the trial judge. App 546–548.. Trial counsel presented no argu[]ment to support this request and acquiesced in the trial judge's ruling. App 546–548..

**GROUND EIGHT:** The Court violated petitioner's 14th amendment and 5th amendment rights by forcing petitioner to wear leg shackles..

*Supporting facts*: At trial, counsel for petitioner argued to the Court; your Honor, when they brought Mr. Portee up today, evidently the decision has been made over the lunch break to shackle him. I have yet to find out a reason for that decision. He's been sitting here for a day and a half with no problems that I've been aware of.. App. 231.

The Court: All right. Well how can I help you? Counsel stated, "I would like the shackles removed." The Court responded, that the shackles are unobtrusive and can't be seen.. App 231.

Counsel again argued, that not the basis for this complaint. The complaint is that it acts as a-- I'm not

24

the biggest psychological guy around, but it psychologically impairs his ability to participate fully in his trial. It's an attempt to intimidate him in the trial of this case when there's been no actions on his part which-- and if there had been, I'd love to hear about them. There has been no actions on his part that I'm aware of to indicate there's any need to treat him differently than some other person going to trial in this courtroom. App.. 231–232.

The Court: I know. But it seems harmless if the jury can't see it. He can live with that psychological trauma because he has been preparing this for a couple of years. Anything else? App. 232.

In order to secure a meaningful defense, and maintaining dignified proceedings; shackles – may not be used unless justified by an individualized security determination conducted by the trial court. By the court neglecting to place it's individualized findings on the record violated his due process.. "Inherently prejudicial."

**GROUND NINE:**     Trial Counsel failures to object to Solicitor's improper remarks to jury was ineffective assistance in derogation of petitioner's 6th amendment right.

*Supporting facts*:     Solicitor's impropers remarks; They left something for you. This was pulled out. You all keep this. You find it, doctor. <u>Take it from me</u>. App 582. "The Solicitor's remarks as, go back there and feel this. <u>It's them</u>. <u>It's the victims</u>. Go back there and get that gun and feel malice. You want to feel malice? Feel it, pass it around" (omission) App 582.

Counsel's failure to object to the improper remarks made by the solicitor in closing argument was impermissible and extremely prejudice against petitioner. These remarks made by solicitor were only for purposes to provoke passion and to induce a point of anger towards the Defendant by the jury/jurors (for Solicitor's to invite the jurors to put themselves in the victim's shoes is improper and impermissible to be done and go unchallenged by Defendant's Counsel).

25

Petitioner's submit than when Solicitor remarks added the language "as you feel it," it's the victims, pass it around, and feel malice. It amounted to inviting the jurors to put themselves in the shoes of the victims. As it violated petitioner's right to a fair trial by a jury, and trial counsel was ineffective when he failed to object to improper remarks made to the jury by the solicitor. Thus, violating petitioner's 6th amendment right to counsel.

**GROUND TEN:** Appellate Counsel failed to appeal trial counsel's objections as they are preserved for appeal/appellate review is ineffective assistance of counsel/as to retrospect to trial counsel's objections on record. The Appellate Counsel cause petitioner to suffer a deprivation of lost to have the Appellate Court give an entitled review to all preserved issues by the Court's Rules.

*Supporting facts*: Petitioner 6th amend of US. Constitution was violated because he have a right to effective assistance of Counsel. Appellate Counsel raised one issue to Appeal Court that didn't have any merits. Petitioner had several issues with merits by the submittals of the records. Counsel raised issues about shackles on client.. App 231–232.. Cameras in Courtroom. App. 91–93.. Jack. Deno hearing as to "Miranda" violation; see adverse ruling on statement. All issues are preserved pursuant to the trial court rules of evidence. App. 77–86. Hearing held on Oct. 20, 2008; regarding Brady violations. See attached documents.. Also see App. 58–60 regarding Brady violations.

Appellate Counsel's failure to raise state claim's, constituted deficient performance. Counsel's inadequate performance shows that she omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. U.S.C.A Const. Amend 6.

[Doc. 1 at 5–21.] As stated, on June 17, 2015, Respondent filed a motion for summary judgment. [Doc. 27.] On September 16, 2015, Petitioner filed a response in opposition. [Doc. 39.] Accordingly, the motion for summary judgment is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

28

> admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed the Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

29

jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application.  S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976).  If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the

judgment.  S.C. R. Civ. P. 59(e).  Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina.  *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

---

[6]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

33

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a

"fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default.  *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## DISCUSSION

**Procedurally Barred Claims**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152,165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds Two, Three, Four, Six, Eight, Nine, and Ten are procedurally barred.  [Doc. 26.]  Respondents also argue Petitioner cannot overcome the default of these grounds because he cannot establish cause and prejudice or a miscarriage of justice.  [*Id.*]  The Court agrees these grounds are procedurally barred.

***Grounds Not Presented to the South Carolina Supreme Court in the*** Johnson
***Petition for Writ of Certiorari or in Petitioner's Pro Se Petition***

As an initial matter, the following grounds are procedurally barred because they were

not presented to the South Carolina Supreme Court in the *Johnson* petition or in

Petitioner's pro se petition [*see* Docs. 26-12; 26-13]:

**GROUND THREE:** Trial counsel was ineffective for failing to investigate and
re-examine the ballistics and DNA analysis. 5th amend.
violation

**GROUND FOUR:** Trial counsel ineffective for failing to raise issue of crime scene
contamination and poisonous-fruit-doctrine

**GROUND SIX:** Trial counsel provided ineffective assistance of petitioner's 4th,
6th, and 14th amendment right for failing to object to
inadmissible evidence.

**GROUND NINE:** Trial Counsel failures to object to Solicitor's improper remarks
to jury was ineffective assistance in derogation of petitioner's
6th amendment right.

**GROUND TEN:** Appellate Counsel failed to appeal trial counsel's objections as
they are preserved for appeal/appellate review is ineffective
assistance of counsel/as to retrospect to trial counsel's
objections on record. The Appellate Counsel cause petitioner
to suffer a deprivation of lost to have the Appellate Court give
an entitled review to all preserved issues by the Court's Rules.

Because these grounds were not fairly presented to the South Carolina Supreme Court,

they are procedurally barred from federal habeas review absent a showing of cause and

actual prejudice.[7]  *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised

---

[7]The Court notes that in his pro se petition in state court, Petitioner argued the PCR
court "failed to make a ruling on petitioner's issues/claims as they are preserved for
appellate review" and specifically argued the PCR court failed to address what is raised in
the Petition as Grounds Three, Four, and Six. [Doc. 26-13 at 11–17.] However, even if this
Court were to construe Petitioner's claim in the pro se petition in state court as raising the
ineffective assistance of trial counsel claims raised here, Grounds Three, Four, and Six are
procedurally barred because they were not addressed in the PCR court's final order of

to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

### Grounds Not Raised On Appeal

The following grounds are procedurally barred as direct claims because they were not raised on direct appeal [*see* Docs. 26-6; 26-7]:

**GROUND TWO:** State's Intimidation of Witness; "Prosecutor Misconduct" 14th amend violation

**GROUND EIGHT:** The Court violated petitioner's 14th amendment and 5th amendment rights by forcing petitioner to wear leg shackles..

Because these claims were not presented on appeal, they are procedurally barred from federal habeas review absent a showing of cause and actual prejudice.[8]

---

dismissal. [*See* App. 771–86.] Although Petitioner submitted a Rule 59(e) motion, as stated, there is no indication in the record that the PCR court addressed this motion. Indeed, the PCR court most likely did not address the motion because the pro se motion would have violated the South Carolina state law against hybrid representation. Accordingly, because a Rule 59(e) motion was not properly filed in the PCR court, these issues that were not ruled on by the PCR court were not preserved for the PCR appeal and are procedurally barred from federal habeas review, *see Marlar*, 653 S.E.2d 266, absent a showing of cause and actual prejudice. *See Whelchel v. Bazzle*, 489 F.Supp.2d 523, 531 (D.S.C. 2006) (holding that the PCR court properly rejected the petitioner's pro se amendments as prohibited under the hybrid representation rule and that because the claims were never properly presented to the state courts, they were unexhausted and procedurally barred).

[8]The Court notes that Petitioner raised the issue of ineffective assistance of counsel for failing to cross examine the witness as to inconsistent statements and intimidation in his pro se brief on appeal and raised the issue that the PCR court "failed to make a ruling" on this claim in his pro se petition. [Docs. 26-7 at 11 (# 102); 26-13 at 11–12.] However, in both of those filings, Petitioner presented the issue as one of ineffective assistance of counsel; here, Petitioner raises this claim as one of prosecutorial misconduct. Accordingly, this claim is procedurally barred.

### *Cause and Prejudice*

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").   Here, Petitioner argues that he can establish cause and prejudice for the procedural default of Ground Four under *Martinez* because PCR counsel's "implemented methodology provided cause for procedural default."  [Doc. 39 at 6.]

In *Martinez*, the Supreme Court elaborated,

[W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances.  The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial.  The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 1318.  Accordingly, the Court in *Martinez*

read *Coleman* as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the

> "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, --- U.S. ---, ---, 133 S.Ct. 1911, 1918 (2013) (quoting *Martinez*, 132 S.Ct.

at 1318–19, 1320–21).  The Court in *Martinez* also noted,

> When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.

132 S.Ct. at 1319.

As an initial matter, *Martinez* does not apply to Grounds Two and Eight because they are not ineffective assistance of counsel claims.  Moreover, the Court in *Martinez* did not extend its holding to PCR appellate counsel, but only to counsel in initial review collateral proceedings.  *See e.g.*, *Crowe v. Cartledge*, C/A No. 9:13-cv-2391 DCN, 2014 WL 2990493 at *6 (D.S.C. July 2, 2014) ("[I]neffective assistance of PCR appellate counsel is not cause for a default."); *Cross v. Stevenson*, Civil Action No. 1:11-cv-02874-RBH, 2013 WL 1207067 at *3 (D.S.C. Mar. 25, 2013) ("*Martinez*, however, does not hold that the ineffective assistance of counsel in a PCR appeal establishes cause for a procedural default.").  Therefore, because Grounds Three, Four, Six, Nine, and Ten were not raised to the highest court in South Carolina in that they were not raised in the petition for writ of certiorari from the denial of Petitioner's PCR application, Petitioner may not rely on *Martinez* to establish cause with respect to these grounds.  Accordingly, Grounds Two, Three, Four, Six, Eight, Nine, and Ten are procedurally barred from consideration by a federal habeas court and should be dismissed.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state

40

court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

### Ground One

In Ground One, Petitioner argues the trial judge erred by not suppressing a statement Petitioner gave when he had not received his *Miranda* warnings.  [Doc. 1 at 5.]

The Fifth Amendment provides: "No person . . . shall be compelled in any criminal case to be a witness against himself."  In *Miranda v. Arizona*, the United States Supreme Court recognized that the atmosphere of custodial interrogation in and of itself is inherently coercive.  384 U.S. 436, 458 (1966).  To ensure the Fifth Amendment privilege against self-incrimination is not undermined in custodial interrogations, the Supreme Court established certain procedural safeguards for counteracting the compelling pressures inherent in the custodial interrogation setting.  *See id.* at 444.  Specifically, *Miranda* requires that before any questioning in such a setting, the person being interrogated must be warned he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney.  *See id.* However, "[i]f  the defendant is not in custody then [*Miranda* and its progeny] do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups)."  *Montejo v. Louisiana*, 556 U.S. 778, 795 (2009).

Here, the trial court conducted a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), and found the following:

> **THE COURT:** All right. That can come in for what it's worth. The officer testified that he did not question him at all. He just responded to the questions.[9] He was Mirandized later before questioning and actually went. So I don't see --
>
> ***
>
> **THE COURT:** -- it doesn't sound like to me. Because he responded he knew why they were wanted to question him. But he didn't question him. If he had asked one follow-up question, I would suppress it.

[App. 86:21–87:16 (footnote added).] Accordingly, the trial court found Petitioner and the officer were engaged in a noninterrogative interaction when Petitioner made the statement and, therefore, *Miranda* did not govern. Based on the foregoing, the Court cannot find the state court's decision was contrary to, or an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this ground is without merit and summary judgment should be granted with respect to this issue.

### Ground Five

---

[9]The trial judge was referring to the officer responding to Petitioner's questions. The officer testified as follows:

> At this point he was asking what was going on. I told him he knew why we needed to talk to him. He said he heard something about what happened at the Wendy's where he worked today but he had nothing to do it. [Petitioner] stated he was dropped off at work at the Wendy's this morning around 7:45 a.m. He knocked on the door and no one let him in so he left. There was no more questioning at this point in time.

[App. 81:3–11.]

In Ground Five, Petitioner argues trial counsel was ineffective for failing to object to the jury instruction on the permissible inference of malice from use of a deadly weapon because the instruction shifted the burden of proof to the defendant. [Doc. 1 at 12.]

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[10] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541

_____

[10]In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether

it is possible for fairminded jurists to disagree that the arguments or theories supporting the

state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated trial counsel's performance under the standard set

forth in *Strickland.*  [App. 772–73.]  With respect to Ground Five, the PCR court found,

> Applicant contends counsel was ineffective for failing to object to the trial judge's jury instruction on the permissible inference of malice from the use of a deadly weapon: This Court finds this contention to be erroneous and improperly raised in the current action.

> The case of State v. Belcher, 385 S.C. 597, 685 S.E.2d 802 (2009), was decided by the South Carolina Supreme Court on October 12, 2009, roughly nine full months after Applicant was convicted of the current charges.  Belcher "represents a clear break from our modern precedent" approving of the jury charge on inference of malice from use of a deadly weapon, expressly overruling some twenty-six (26) cases decided over the course of more than 100 years, ranging in date from 1894 to 2006.  Id. at 612, 685 S.E.2d at 810.  The charge given in Applicant's case was, at the time of his trial, the sanctioned charge on the law.  Because the Belcher decision posed a clear break from long-established precedent and was not decided until *after* Applicant's conviction, counsel was not objectively unreasonable in failing to pose an objection to the charge given.  Gilmore v. State, 314 S.C. 453, 445 S.E.2d 454 (1994) (attorney is not required to be clairvoyant or anticipate changes in the law which were not in existence at time of trial) (overruled on other grounds by Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999)).

> Further, Belcher's removal of the permissible inference of malice only applies in cases where there is evidence "presented that would reduce, mitigate, excuse or justify a homicide": Applicant alleged he did not commit the killings and there is no evidence in the record reducing, mitigating, excusing or justifying the homicides.  Therefore, Belcher is inapplicable and the permissible inference of malice was properly charged.

44

> Finally, the South Carolina Supreme Court expressly noted in the opinion that the "ruling, however, will not apply to convictions challenged on post-conviction relief." Id. at 613, 685 S.E.2d at 810. Accordingly, this issue is also a not proper ground for relief through this PCR action. It is therefore denied and dismissed.

[App. 781–82.]

Although the PCR court addressed the issue only with respect to the *Belcher* decision and not with respect to the constitutionality of the permissible inference of malice instruction, jury instructions must be viewed as a whole and error is found only if the petitioner proves a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. *Boyde v. California*, 494 U.S. 370, 380–81 (1990); *see also Estelle*, 502 U.S. at 72. The Court explained that this standard was a "likelihood" of misinterpretation as opposed to a "slight possibility" of misinterpretation, and that a juror "could have" misinterpreted an instruction is different from the reasonable likelihood that the juror did misinterpret the instruction under the standard in *Estelle*. *See Weeks v. Angelone*, 528 U.S. 225, 236 (2000). *Sandstrom v. Montana*, 442 U.S. 510 (1979), and its progeny prohibit charging the jury with mandatory presumptions from various situations arising out of a trial. The Supreme Court has held that "[a] mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." *Francis v. Franklin*, 471 U.S. 307, 314 (1985) (footnote omitted). Further, "[a] permissive inference does not relieve the State of its burden of persuasion because it still requires the State to convince the jury that the suggested conclusion should be inferred based on the predicate

facts proved.  Such inferences do not necessarily implicate the concerns of *Sandstrom*.

A permissive inference violates the Due Process Clause only if the suggested conclusion

is not one that reason and common sense justify in light of the proven facts before the jury."

*Id.* at 314–15.

> Here,  the trial judge gave the following instructions on malice:

>> Malice must exist, jurors.  Malice is a term of art that imparts wickedness.  It excludes just cause or excuse. Express malice is where, for instance, a person says they're going to kill somebody and then they just immediately kill somebody.  You can understand that.

>> The jury considering the entire case can also conclude by deductive reasoning that under certain circumstances malice might arise even though there was no express or direct evidence of an intent to kill.

>> If a person, for instance, kills someone during the commission of a felony, the implication of malice could arise. That's just evidence in the case.  The jury can consider whether malice would arise from that.

>> And in addition, where a deadly weapon is used, it's permissible for a jury to infer malice.  If it's proved beyond a reasonable doubt that a person was killed with a deadly weapon or a dangerous instrumentality, the implication of malice does arise and it would permit you to infer malice but it would not require you to infer malice.  That would be entirely up to you jurors.  In other words, you jurors are free to accept or reject any inferences raised from the commission of a felony or the use of a deadly weapon or whether malice was proved.

>> Now, jurors, malice does not have to exist for any lengthy period of time.  It just must predate the killing.  Okay. If it's right before the killing, that satisfies the definition of premeditate.

[App. 620:20–21:25.]  This jury instruction does not require any mandatory presumptions.

The trial judge did not force the jury to find malice from the use of a deadly weapon but

allowed them to infer malice.  The choice to infer malice was squarely placed on the jury and no mandatory presumption was created.  Accordingly, the charge was proper, and counsel cannot be held ineffective for failing to object to the charge.  *See Almon v. United States*, 302 F.Supp.2d 575, 586 (D.S.C. 2004) ("There can be no ineffective assistance of counsel for failing to raise a claim which is not legally viable."  (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999))).  Thus, Petitioner is not entitled to habeas corpus relief on this ground  and summary judgment should be granted with respect to this issue.

### Ground Seven

In Ground Seven, Petitioner contends that trial counsel was ineffective for "failing to   secure an alibi charge when there was evidence that the crime could have been committed when petitioner was in Georgia."

With respect to Ground Seven, the PCR court found,

> Applicant first alleges counsel was ineffective for failing to present an alibi defense at trial based upon the possibility that Applicant could have been in Georgia at the time the robbery/murders occurred.
>
> As a brief background, the current convictions challenged stem from the September 3, 2006, robbery and murder of two Wendy's fast food restaurant employees at the Two Notch Road Wendy's location.  The two victims were shot in the head inside the manager's office, where sixteen-hundred dollars ($1600) was missing from the open safe.  Applicant was an employee of that Wendy's location and was scheduled to be the third employee working that morning with the victims.  He was made a prime suspect almost immediately and was ultimately arrested for the murders later that same day.
>
> At the PCR hearing, Applicant testified he reported to Wendy's on September 3, 2006, at about 8:30 a.m. for his shift as scheduled.  He stated he knocked on the back door as

47

usual to be let in by one of the other employees, but received no answer at the door.  After looking into one of the victim's cars parked in front of the building, Applicant said, he waited for a little while before leaving to go home.  When he arrived home, Applicant testified he told his mother about his inability to get in at work, but did not call the police to report the strange occurrence despite his mother telling him to do so.  Applicant stated it "happened all the time" that he would arrive at work and nobody would answer the door.  He noted he did not have a key to the restaurant door and could not get into the building in the morning before the restaurant opened without a manager or someone inside opening the back door for him.

Applicant said from there, he and his baby's mother drove to Augusta, Georgia, because one of her godparents who lived there was sick.  He testified he wasn't sure when they arrived in Augusta because they stopped at a McDonald's to eat on the way, but thought they left Columbia around 9:00 or 9:15 a.m.  Applicant went on to say they stayed in Augusta until roughly 1:30 or 2:00 p.m. before leaving to drive back to Columbia, and when they arrived home he spent time at a friend's house and his mother's house.  Applicant said he was walking to a nearby cookout when the police stopped him on the side of the road later that day and detained him.

Applicant said he discussed this entire sequence of events with counsel during their pretrial meetings and alleges counsel should have argued at trial that, because there was no specific time of death reported on the victims, Applicant could have been in Augusta, Georgia, at the time of the robbery/murders.  Applicant said counsel investigated the potential of developing an alibi defense and said he told counsel's private investigator ("McNeily") to look into it.  Applicant said McNeily told him "everything checked out" with that alleged alibi and that was the last Applicant heard about it.  Applicant stated there were cell phone records showing he was in Georgia on the day in question, but said they were never used at trial by counsel.

On cross-examination, Applicant conceded the evidence introduced at trial reflected at least one of the victims (Carlaus Johnson) clocked into work at 8:05 a.m. that morning based on her clock-in receipt found near the computer.  He also agreed Stephanie Crumpton, a fellow Wendy's employee, testified that when she arrived at the restaurant for her shift at 10:00 a.m.,

nobody answered the back door and the kitchen faucet was running, overflowing the sink onto the floor.  Applicant likewise conceded Kelly Jones, a Wendy's employee at another Columbia location, testified at trial she spoke with Johnson and the second victim (Latora Bolton) on the Wendy's phone line at 8:15 a.m. that morning, but when she called the restaurant again at 8:43 a.m. the phone rang continuously with no answer.  With that timeline in place, Applicant readily agreed it would have been logical for the jury to infer the murders probably occurred between 8:15 a.m. and 8:43 a.m. despite the absence of a specific "time of death" on the autopsy reports.  He again noted he did not leave Columbia for Augusta until 9:00 or 9:15 a.m.

Doug Strickler, Esquire, (hereafter "Strickler") testified he recalled his representation of Applicant on these charges and said he took over representation of Applicant in September of 2006.  He stated both Ashley Thomas, Esquire, and Fielding Pringle, Esquire, assisted in the representation of Applicant. When asked about the alleged alibi of Applicant having been in Augusta, Georgia, Strickler stated he investigated the timeline and evidence thoroughly, ultimately concluding the trip to Augusta would not work as an alibi at trial. Strickler went on to say Applicant admitted to being at the Wendy's at about 8:05 a.m. that morning and, thus, there was no real discrepancy that he had been there very close to or when the crimes occurred. Strickler said Applicant's presence in Georgia was irrelevant to his ability to be at the scene when the incident occurred based on the timeframe, and said Applicant was unable to offer anything to corroborate he was somewhere else when the robbery most likely occurred.

On cross-examination, Strickler plainly stated the evidence was pretty clear the murder occurred sometime between 8:00 and 8:43 a.m. and, based on his extensive experience in cross-examining expert pathologists, he believed the coroner would have stated the same timeframe had he been asked to estimate a time of death.  Strickler went on to say "any reasonable person, including the twelve jurors in the box", would believe based on the evidence that the victims were killed sometime prior to Jones's 8:43 a.m. phone call that went unanswered. Regarding the phone records, Strickler said he did obtain them and they did nothing to show Applicant was in Augusta any time before roughly 11:00 a.m., well after the crimes had occurred.

49

After a thorough review of the record and the testimony presented at the PCR hearing, this Court finds this allegation to be without merit. First, this Court finds counsel's testimony to be credible regarding his investigation into and the details of the timeline, while conversely finding Applicant's testimony about his conduct on the day in question to be not credible. Counsel credibly testified he conducted a thorough investigation of Applicant's alleged alibi, ultimately concluding it was insufficient to prove Applicant's whereabouts at the time of the crimes. At trial, testimony was elicited from Applicant's girlfriend (Heather Hunter), her son [redacted], and several other witnesses indicating Applicant had in fact gone to Augusta, Georgia, on the date in question. Counsel requested the trial court give a jury instruction on the law of alibi based upon that testimony. The trial court refused to do so, instead opting to charge that where there is "evidence of alibi" presented, the state has the burden of proving the accused was at the scene of the crime and, if there is any reasonable doubt he was present, the jury should find him not guilty. "[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." Glover v. State, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995). The evidence presented at trial and the PCR hearing is clear in showing no true alibi existed for Applicant based upon the timeline presented. Applicant has failed entirely to establish how counsel's performance was objectively unreasonable in this regard.

Further, Applicant has failed to prove resulting prejudice based upon this alleged deficiency. The testimony presented at trial by several witnesses, as well as the credible testimony of Strickler at the PCR hearing, reflect a very consistent and reliable inference the robbery/murders occurred sometime between 8:15 a.m. and 8:43 a.m. on September 3, 2006. The cell phone records produced at the PCR hearing by Applicant do nothing to support an alleged alibi defense as they merely reflect Applicant was in Georgia later in the morning around 11:00 a.m., well after the victim's bodies had been found at the restaurant. Even if taken as true, Applicant's contention that he left for Georgia sometime between 9:00 and 9:15 a.m. does not provide an alibi for the timeframe in which the murders likely occurred. Evidence which makes it "less likely" the accused is the guilty party, but leaves open the physical possibility of guilt,

50

> does not meet the legal definition of alibi sufficient for a
> showing of prejudice on post-conviction relief. See Walker v.
> State, 397 S.C. 226, 723 S.E.2d 610 (Ct. App. 2012). The
> evidence and/or arguments Applicant contends counsel failed
> to obtain and/or present at best makes it "less likely" Applicant
> is not the guilty party; however, they do not affirmatively
> account for Applicant's presence elsewhere and fail to
> convince this Court there is any "reasonable probability" the
> outcome at trial would have been different had they been
> presented at trial. Accordingly, this allegation is denied.

[App. 774–78 (footnotes omitted).]

The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the Strickland standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of Strickland. The facts supporting the PCR court's reasoning are well founded in the testimony at trial and at the PCR hearing. Therefore, Petitioner has not established that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on this ground.[11]

─────────────────────

[11]Additionally, with respect to all ineffective assistance of counsel claims, the PCR court found that Petitioner could not prove resulting prejudice from any alleged deficiency because he was facing overwhelming evidence of guilt at trial. [App. 783–84.]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's

motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

December 29, 2015
Greenville, South Carolina